**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**DAYTON DIVISION**

|  |  |  |
|---|---|---|
| **JANE DOE,** | * | **CASE NO.: 3:20-CV-00010** |
|  | * |  |
| **PLAINTIFF,** | * | **MOTION FOR JUDGMENT ON THE** |
|  | * | **PLEADINGS** |
| **v.** | * |  |
|  | * | **JUDGE WALTER RICE** |
| **DAVE YOST, ET AL.,** | * |  |
|  | * |  |
| **DEFENDANTS.** | * |  |
|  | * |  |
|  | * |  |

---

MOTION FOR JUDGMENT ON THE PLEADINGS BY THE MERCER COUNTY
PROSECUTOR

---

Defendant Matthew K. Fox, by and through Assistant Prosecuting Attorney Amy B.

Ikerd, hereby moves the honorable court, pursuant to Fed.R.Civ.P. 12(c), to dismiss this action

for lack of subject matter jurisdiction or to dismiss the Mercer County Prosecutor as a party for

failure to state a claim upon which relief can be granted.   Plaintiff can show no evidence that

there is prosecution for political speech or any threat of any prosecution for the same by the

Prosecutor.  Further, the laws challenged by the Plaintiff do not reach political speech or

criticism of governmental officials.  For these reasons, the case should be dismissed entirely, or

alternatively, defendant Prosecutor Matthew K. Fox should be dismissed from the case.

A memorandum supporting this motion follows.

Respectfully submitted,


/s/  *Amy B. Ikerd*
**Amy B. Ikerd, (0067067)**
**Assistant Prosecuting Attorney**
**119 North Walnut Street**
**Celina, OH 45828**
**(419) 586-8677 (Telephone)**
**(419) 586-8747 (Facsimile)**
**amy.ikerd@mercercountyohio.org**


## MEMORANDUM IN SUPPORT

### I.  BACKGROUND

Ohio's cyber-harassment law became part of Ohio's long-standing menacing by stalking and telecommunication harassment statutes in 2016.  Since that time, no court in Ohio has held that it reaches the expression of political views or government criticism.  The legislature designed the amendments to protect victims from abuse, threats and harassment and requires specific intent to convict.  It was not designed to, nor does it reach expression of political views or criticism of government officials.  Despite Plaintiff's unsupported fears and unsubstantiated allegations, she neither faces prosecution nor the threat of prosecution.

In her complaint, Plaintiff speculates that the challenged law will be used to prosecute political speech critical of the government and claims inaccurately that three criminal cases in Mercer County prosecuted political speech.   The first case that Plaintiff claims prosecuted political speech is *State v. Rasawehr*, Celina Municipal Court Case No. 16-CRB-0943.[1]  She

---

[1] The Celina Municipal Court docket is available to the public online at:
https://celinamunicipalcourt.org/  **For the court's convenience, certified copies of the pleadings filed and of public record referenced throughout this pleading can be found as Exhibits to Prosecutor Fox's Answer.**

alleges that defendant Rasawehr was charged with menacing by stalking and telecommunications harassment *for criticizing the Mercer County Sheriff's Office*.  (Complaint, Doc.1, PageID #9-10, at ¶23-29.)

This allegation is patently false.

An analysis of the defendant's conviction and the evidence presented can be found in *State v. Rasawehr*, 2020-Ohio-429 (3rd Dist. February 10, 2020).  In that case, Mr. Rasawehr was charged with violations of 2903.211(A)(1), the menacing by stalking statute, and 2917.21(A)(6), the telecommunications statute.  On appeal, the court affirmed the defendant's convictions for telecommunication harassment and menacing by stalking against his ex-wife.[2]  The Third District noted that the state proved defendant called the victim stating:

> What did you do twenty year [sic] ago today
>
> Are u [sic] with kids or are u [sic] in a mental institution
>
> Josh implied u r [sic] in a mental institution
>
> If I do not get an answer I am going to have police stop and check tonight
>
> Calling police now

The defendant also called the victim and left her a voicemail where the defendant states:

> "should remember th[at] day well" because "21 years ago [she] took [her] pills and murdered" two men, and Rasawehr can be heard asking the victim if she "remember[ed] murdering those two men." (State's Ex. 50). Further, Rasawehr can be heard stating that the victim "never paid the price for what [she] did" and that she should "sit at church and pray for killing those two men."

---

[2] It should be noted that Mr. Rasawehr was prosecuted in a companion case, *State v. Rasawehr*, Case No. 16-CRB-0942, wherein he was charged with *obstructing official business* for repeatedly calling the Sheriff's Office for the purpose of delaying and obstructing the office, through its employees, from conducting their official duties.  Mr. Rasawehr was not convicted in that case.  See *State v. Rasawehr*, 3d Dist. Mercer No. 10-19-15, 2020-Ohio-429, P8.

(*Id.* at P23).  This was *in addition* to the harassing *pattern of conduct* by the defendant.

Regarding that pattern, the court noted evidence from the victim that

> Rasawehr can be heard saying that the victim can "record all that [she] wants" because "the hillbillies in Mercer County will cover [her] ass" but that he is "going to take [the Mercer County Sheriff] out, [he] is still taking that mother fucker out." (State's Ex. 50). Rasawehr can further be heard informing the victim that she should change her voice recording because she sounds "measly," "pathetic," and "whiny," and Rasawehr declares "no wonder [she] pops so many pills." (*Id.*).

> Based on that evidence, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Rasawehr made a threating, intimidating, menacing, coercive, or obscene statement. *Indeed, the September voicemail includes Rasawehr's expression of an intention to inflict injury to the Mercer County Sheriff—that is, a threatening and menacing statement—as a means of creating fear in the victim, which results in an intimidating and coercive statement.*

*Id.*, at P34 (emphasis added).   The state provided evidence that demonstrated not only Raswehr directly intimidated of his family, but also of a direct threat to a third party.  *Id.*, at P35.  The defendant was convicted on a number of those charges and a number were dismissed for technical reasons.  The defendant appealed, and the third district has affirmed his conviction. *State v. Rasawehr*, 2020-Ohio-429 (3rd Dist. February 10, 2020).  Plaintiff's claims that the case involved postings critical of the government are simply false.  Mr. Rasawehr's campaign of intimidation against his family is not in any way similar to Plaintiff's alleged political comments about local government officials on social media.[3]  In addition to criminal charges for his pattern of conduct, Mr. Rasawehr's mother and sister both sought and received menacing by stalking

---

[3] It is important to note that the Rasawehr case only involved prosecutions under 2903.211 (A)(1) and 2917.21(A)(6), not the multiple sections of code that Plaintiff asks this court to declare unconstitutional.  See Complaint, Doc.1, PageID #13-14.

civil protection orders against him to protect themselves from his continuous harassment and abuse.  See *Bey v. Rasawehr*, 2020-Ohio-3301.[4]

The remaining two cases alleged by the Plaintiff to support her unfounded fears involves the mother and father of a defendant convicted of sexual assault.  Plaintiff alleges that she is familiar with these cases.  A review of the cases compared to allegations about them, show that she is not familiar with them and in fact is not in danger of prosecution for similar conduct.

The parents of this defendant are accused of using social media, through a Facebook page, to abuse and harass their son's victim.   To place their abuse in context, it is important to understand the basics of their son's criminal case.  A summary can be found in *Summers v. Jenkins*, 2016 U.S. Dist. LEXIS 135914, when it addressed a companion criminal case filed in a neighboring county as follows:

> The victim of the Darke and Mercer County offenses was an underage female high school student; Summers was her teacher and coach, age 35. Summers claimed that he and the victim had a close, romantic relationship and that their sexual activity was consensual, although he acknowledged that it "crossed the line" and that, as an adult, "any contact was wrong." The victim claimed that she felt coerced and manipulated into the sexual relationship and that she was not a willing participant. The sexual conduct occurred over the course of more than two years. Summers and the victim lived in Mercer County, and most of the sexual activity occurred in Mercer County. The Darke County offense was based on a night they spent in a Greenville hotel. The victim eventually told her mother about the sexual conduct.
>
> In November 2012, Summers was charged with more than forty counts of rape, sexual battery, and gross sexual imposition in Mercer County. In January 2013, he was indicted on one count of sexual battery in Darke County. He entered guilty pleas in both cases in August 2013. In Mercer County, Summers pled guilty to eight counts of sexual battery, in exchange for which the other charges were dismissed. On October 10, 2013, he was sentenced to thirty months on each count, to be served consecutively, for an aggregate

---

[4] In *Rasawehr v. Bey*, the Ohio Supreme Court recently reviewed this civil protection order and limited it to insure compliance with First Amendment protections.  *Bey v. Rasawehr*, 2020-Ohio-3301 (June 16, 2020).

term of twenty years. The next day, he was sentence [sic] in Darke County to a term of one year in prison, to be served consecutively with the Mercer County sentence.

*Id.* at ¶2-¶3; *see also Summers v. Jenkins*, U.S. Dist. LEXIS 24710 (S.Dist. Ohio, 2017) and

*Summers v. Warden Chillicothe Corr.Inst.*, 2018 U.S. App. LEXIS 37196 (6th Cir. 2018).

Shortly after their son plead guilty and was sentenced, his parents, the "Summers", started a social media page and proceeded to use it to, among other things, abuse their son's victim, her family, and witnesses in their son's trial. After years of ongoing abuse of the victim, the Summers finally were charged with using social media in a campaign to harass and intimidate that victim. Specifically, the Summers targeted their son's victim and her family for abuse, by directing other people to the victim's Facebook page and even posting an open letter to the victim's mother, among other postings. On June 20, 2019, the parents of this defendant were indicted on multiple counts of violations of menacing by stalking and telecommunications harassment for intentionally causing this victim mental distress or attempting to do the same. (Fox Answer, Doc.10, PageID #41, at ¶27.) See also Mercer County Common Pleas Case Nos. 19-CRM-106 and 19-CRM-107, indictments filed 6/20/2020[5]. These charges involved violations of 2917.21(B)(2) and 2903.211(A)(1).[6] Both companion cases were then transferred to Celina Municipal Court. A mere six days

---

[5] The Docket and pleadings for the Mercer County Common Pleas Cases can be accessed by the public through www.mercercountyohio.org and then proceeding through the Clerk of Court's tab to its case management system. **For the court's convenience, certified copies of the pleadings filed and of public record referenced throughout this pleading can be found as Exhibits to Prosecutor Fox's Answer.**

[6] Similar to the first case cited by the Plaintiff, these two companion cases do not involve all of the sections of the Ohio Revised Code that the Plaintiff asks this court to declare unconstitutional. See FN. 3; *see also* Complaint, Doc.1, PageID #13-14. The defendants are charged with violations of Ohio Revised Code 2903.211(A)(1) and 2917.21(B)(2) (along with companion attempt charges under 2923.02(A). Yet, Plaintiff challenges the constitutionality of Ohio Revised Code 2917.21(A)(1), (A)(6), (A)(10), (B)(1) and (B)(2), the telecommunications statute.

after the case at bar was filed, defense counsel in the Summers' misdemeanor cases moved for a stay of proceedings citing this case as a basis for the stay. The court granted the motion, and the criminal cases have been stayed pending the outcome of this declaratory judgment action. (Fox Answer, Doc. 10, PageID #40-41, at ¶5-¶6.) See also Celina Municipal Case Nos. 19-CRB-00410 and 19-CRB-00411). Thus, the remaining two cases cited to by the Plaintiff involves allegations of the parents of a convict harassing their son's victim over a period of years. Despite Plaintiff's claims, n*ot a single charge involves criticism of the government or any elected official.* Further misunderstanding the facts, Plaintiff alleges that the Summers each face a potential 279 months in jail. (Complaint, Doc.1, PageID #9-10, at ¶25-¶26.) Rather, Ohio law would limit any sentence to eighteen months in jail. O.R.C. 2929.41(B)(1). More importantly, however, every charge against the Summers relates to the defendants' knowing and purposeful attempts to harass the victim. (Fox Answer, Doc. 10, PageID #41, at ¶27.) The Summers' campaign of harassment is not anything like Plaintiff's purported political comments directed at elected officials and cannot be used to demonstrate prosecutions of people like her in the past.

## II.   STANDARD FOR JUDGMENT ON THE PLEADINGS

Motions for Judgment on the pleadings and motions to dismiss use the same standard of review. *Allen v. Nationwide Mut. Ins. Co.*, 2018 U.S. Dist. LEXIS 62592 (S.Dist., 2018)(quoting *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007)).

To survive such a motion, the plaintiff must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Or, as noted by the Sixth Circuit:

To survive a motion to dismiss, a complaint must plead "facts" that create a "plausible inference" of wrongdoing. Iqbal, 556 U.S. at 682. The mere fact that someone believes something to be true does not create a plausible inference that it is true.

*Germain v. Teva Pharms., USA, Inc. (In re Darvocet, Darvon, & Propoxyphene Prods. Liab.*

*Litig)*, 756 F.3d 917 (6th Cir.2014).  To survive, the plaintiff must make more than

"threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

And the mere fact that the plaintiff believes something is not sufficient to state a claim.

*Germain*, at 931.

When deciding these motions, a court may take judicial notice of public records.

*Laning v. Doyle*, 2015 U.S. Dist. LEXIS 19424, citing *Jones v. City of Cincinnati*, 521 F.3d

555 (6th Cir. 2008); *see also* Gavitt v. Born, 835 F.3d 623, 640 (6th Cir. 2016).    Further,

> [i]n determining the sufficiency of the allegations in a complaint, a court may consider exhibits attached to a motion for judgment on the pleadings, without converting it to a motion for summary judgment, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

*Laning v. Doyle*, S.D.Ohio No. 3:14-cv-24, 2015 U.S. Dist. LEXIS 19424, at *6 (Feb. 18,

2015).  Finally, the court need not accept as true allegations in the complaint that are

contradicted by public records and other evidentiary materials capable of judicial notice.

*Goodwin v. County of Summit*, 2016 U.S. Dist. LEXIS 128901 (N.Dist, 2016).

## III.    THE PLAINTIFF LACKS STANDING

Courts examine standing as a threshold issue as it impacts subject matter jurisdiction.

*Lash v. City of Union*, S.D.Ohio Case No. C-3-98-045, 1999 U.S. Dist. LEXIS 22150 (Sep. 27,

1999).  When a defendant challenges subject matter jurisdiction, the plaintiff bears the burden of

establishing that jurisdiction. *Giesse v. Secy. of HHS*, 522 F.3d 697, 702 (6th Cir.2008);

*Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).

When petitioning for declaratory judgment actions in federal court, and as part of the

standing issue, the Plaintiff must show that her case is justiciable. This involves proving that

there is an actual case in controversy to avoid advisory opinions from the court. *Michigan State*

*Chamber of Commerce v. Austin*, 788 F.2d 1178 (6th Cir. 1986). To meet the justiciability

threshold, a plaintiff must show both standing and that the case is "ripe" for adjudication. *Id.* at

1181-1182. With regards to criminal statutes, a plaintiff need not subject herself to actual arrest

or prosecution to challenge a particular statute that she claims adversely impacts her

constitutional rights. Instead, under these circumstances a "pre-enforcement challenge" can be

allowed. When bringing a pre-enforcement challenge, "a plaintiff satisfies the injury-in-fact

requirement where he alleges 'an intention to engage in a course of conduct arguably affected

with a constitutional interest, but proscribed by a statute, and there exists a credible threat of

prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 134 S.Ct. 2334, 189

L.Ed.2d 246 (2014)(quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99

S. Ct. 2301, 60 L. Ed. 2d 895 (1979)). However, persons having fears of prosecution that are

"imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Id.* (*quoting Younger*

*v. Harris*, 401 U.S. 37, 42, 27 L.Ed.2d 669, 91 S.Ct. 746 (1971). Further, that court noted that

"[w]hen plaintiffs "do not claim that they have ever been threatened with prosecution, that a

prosecution is likely, or even that a prosecution is remotely possible," they do not allege a

dispute susceptible to resolution by a federal court." *Id.* Importantly, a "party's subjective fear

that she may be prosecuted for engaging in expressive activity will not be held to constitute an

injury for standing purposes." *Plunderbund Media L.L.C. v. Dewine*, 312 F. Supp. 3d 654, 663

(N.D.Ohio 2018), *affirmed by* Plunderbund Media, L.L.C. v. DeWine, 753 Fed.Appx. 362

(2018).  Instead, threats of future enforcement are credible when the "same conduct has drawn

enforcement actions or threats of enforcement in the past."  *Schickel v. Dilger*, 925 F.3d 858 (6th

Cir.2019), citing *Kiser v. Reitz*, 765 F.3d 601, 609 (6th Cir. 2014).  Thus, a Plaintiff must

demonstrate three elements to have pre-enforcement standing with a federal court.  Those three

elements are 1) she must have suffered an "injury in fact" which is "concrete and particularized",

and "actual or imminent, not conjectural or hypothetical", 2) the injury-in-fact must be "traceable

to the challenged action of the defendant" and 3) it is likely, and not speculative, that the injury

will be redressed by a favorable decision from the court.  *Fieger v. Ferry*, 471 F.3d 637, 643 (6th

Cir.2006); *Macy v. GC Servs. Ltd. partnership*, 897 F.3d 747, 752 (6th Cir.2018).

    Additionally, when seeking a declaration that a statute is unconstitutional on its face, a

plaintiff must show "actual present harm or a significant possibility of future harm" resulting

from the continued enforcement of the statute in question.  *Brent v. Wayne Cty. Dept. of Human

Servs.*, 901 F.3d 656, 675 (6th Cir.2018);  *Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir.2006).  In

the case at bar, the Plaintiff seeks a pre-enforcement declaratory judgment regarding the Ohio

Telecommunications Harassment and Menacing by Stalking Statutes under 28 U.S.C. §§ 2201

and 2202.   Specifically, she asks this court to declare Ohio Revised Code sections

2903.211(A)(1), (A)(2), (D)(1), and (D)(7), effectively the entire Menacing by Stalking statute,

as unconstitutional on its face.  Similarly, she challenges the constitutionality on its face of Ohio

Revised Code 2917.21(A)(1), (A)(6), (A)(10), (B)(1) and (B)(2), the telecommunications statute.

To declare a statute unconstitutional on its face, the plaintiff must show that there is a "realistic

danger that the statute itself will significantly compromise recognized First

Amendment protections of parties not before the Court . . . ." *Bench Billboard Co. v. City of*

*Cincinnati*, 675 F.3d 974, 985 (6th Cir.2012)(quoting *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984)).

An examination of the allegations of the Plaintiff and the public record demonstrates that the Plaintiff has no standing in this case and cannot show that that she is in realistic danger that the statute compromises First Amendment rights.

### A.    Menacing by Stalking and Telecommunications Harassment

### 1.    Plaintiff Has No Injury in Fact

As noted above, a plaintiff must satisfy the injury-in-fact prong of the standing threshold. In pre-enforcement context, when the plaintiff has not faced criminal prosecution of the challenged statute, she must allege that she intends to "engage in a course of conduct" involving a constitutional right that is proscribed by the challenged statute and that there is a credible threat that she will be prosecuted for that conduct. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-159, 134 S.Ct. 2334, 2342 (2014). When alleging subjective chill, plaintiffs must show some combination of a history of enforcement against the plaintiff or others and enforcement warning letters sent to the plaintiff regarding the challenged conduct or some part of the statute makes enforcement easier such as allowing members of the public to enforce the law. *Platt v. Bd. of Commrs. on Grievs. & Discipline of the Ohio Supreme Court*, 769 F.3d 447, 452 (6th Cir., 2014). When examining this issue, courts may also consider a defendants willingness or unwillingness to disavow enforcement as applied to the plaintiff. *Id.* at 452.

In this case, Plaintiff challenges Ohio's Menacing by Stalking and Telecommunications Harassment statutes for being overbroad, vague, and vesting prosecutors with "unbridled discretion to charge online expression, creating a chilling on the protected right of free speech

and not justified by a compelling governmental interest. (Complaint, Doc.1, PageID #12.) Yet, she offers nothing by speculation, conjecture, and her unfounded fear of prosecution to justify her standing in this case. But, the Ohio legislature drafted these statutes with a requirement of specific intent. See *Plunderbund Media L.L.C. v. Dewine*, 312 F. Supp. 3d 654 (N.D.Ohio 2018), *affirmed by Plunderbund Media, L.L.C. v. DeWine*, 753 Fed.Appx. 362 (2018). To have standing to challenge these statutes, the plaintiff must allege that she was going to engage in the conduct that is prohibited, the so-called "injury-in-fact".

In this case, the Plaintiff fails to allege conduct covered by the statutes. Specifically, to satisfy the injury-in-fact prong for telecommunications harassment she must, as to O.R.C. § 2917.21(A)(1) allege that she intended to *knowingly* make a telecommunication *to another* with the *purpose to harass, intimidate, or abuse* any person at the premises receiving the communication. As to O.R.C. § 2917.21(A)(6) plaintiff needs to allege that she intended to *knowingly* make a telecommunication to another and *knowingly* make a "comment, request, suggestion, or proposal to the recipient of the telecommunication that is threatening, intimidating, menacing, coercive, or obscene with the *intent to abuse, threaten, or harass the recipient*". As to O.R.C. § 2917.21(A)(10), she needs to allege that she intended to *knowingly* make a telecommunication to another with the intent to *knowingly* incite another person through a telecommunication or other means to harass or participate in the harassment of a person. As to O.R.C. § 2917.21(B)(1), cause to make a telecommunication with *purpose* to abuse, threaten, or harass another person. As to O.R.C. § 2917.21(B)(2) *knowingly* post a text or audio statement or image on an internet website for the *purpose* of abusing, threatening, or harassing another person.

Plaintiff fails to so allege.

With regards to the menacing by stalking statute, the plaintiffs risk of prosecution is even more unlikely.  To violate the statute, she must assert that she intends to maintain a "pattern of conduct" to "knowingly cause another person to believe" that she will cause physical harm or mental distress to the other person. O.R.C. §2903.211(A)(1).  Under O.R.C. §2903.211(A)(2) the Plaintiff would have to use written communication to post a message with the purpose to violate (A)(1) or incite someone else to do so.  Mental distress is defined in O.R.C. §2903.211(D)(2) as follows:

> "Mental distress" means any of the following:
> (a) Any mental illness or condition that involves some temporary substantial incapacity;
> (b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

Further, Ohio courts have interpreted the statute to limit it.  For instance, in the *Rasawehr* case cited by the Plaintiff, the court found the defendant guilty of contacting the victim directly, and that he knowingly cause the victim to believe that he would cause her mental distress or physical harm.  *State v. Rasawehr*, 3d Dist. Mercer No. 10-19-15, 2020-Ohio-429, P22-23.   See also *Frenchko v. Frenchko-Nagy*, 89 Ohio App.3d 77, 2015-Ohio-4546, 42 N.E.3d 829 (11th Dist.)(addressing a civil stalking order that uses the same definition of mental distress as O.R.C. §2903.211 and finding that mental distress over a threat to lose one's job is not sufficient under the statute);

Plaintiff's allegations in the complaint fail to demonstrate any risk of violating this statute.  Further, the allegations must also be read in light of Prosecutor Fox's admission that the statutes do not reach political discourse.  (Fox Answer, Doc. 10, PageID #37-41, at ¶9, ¶10, and ¶38.) See *Platt v. Bd. of Commrs. on Grievs. & Discipline*

*of the Ohio Supreme Court*, 769 F.3d 447, 452 (6th Cir., 2014)(noting that an
unwillingness for a Defendant to indicate whether or not conduct is a violation facing
prosecution can be weighed by the Court).

First, plaintiff makes no allegation that she has been specifically threatened with
prosecution. Her complaint only involves subjective chill. While the Plaintiff does list a number
of activities that she has stopped doing due to her unsupported fears, none of those alleged
ceased activities falls within the prohibitions of the statute. See *McKay v. Federspiel*, 823 F.3d
862, 868-869 (6th Cir.2016)(noting that the mere allegation of subjective chill on First
Amendment protected speech is insufficient to establish injury-in-fact for a pre-enforcement
challenge). In her complaint, she cites to three Mercer County cases in an attempt to support her
claim that others have been prosecuted for similar conduct. She purports to be familiar with
these cases, the Rasawehr and Summers' cases, from news media coverage. She also alleges
that she "frequently participates in political dialogue, both online and in face-to-face interactions,
and actively monitors the activities of local governmental entities and officials", and claims to
have ceased political dialogue online, particularly on Facebook pages that are critical of
government officials, out of fear that she will be arrested and prosecuted. . . ." because of those
three cases. (Complaint, Doc.1, PageID #2 and #10) To bolster her claim she further asserts that
she has 1) "offered criticism of Mercer County governmental officials, their actions, and
decisions  . . . ." in the past, 2) has ceased posting critical comments about local governments
online. 3) has specifically "stopped commenting on the "Justice for Chris Facebook page and
other social media outlets; 4) fearing that she would be prosecuted for engaging in political
debate, because she 5) "lacks financial resources to be able to mount a vigorous defense in the

event that Prosecutor's Fox or any other rogue prosecutor pressed criminal charges against her for her online commentary." (Complaint, Doc.1, PageID #10-11.)

She fails to provide facts to support her beliefs that her alleged past postings are proscribed by the challenged statutes. None of the activities that Plaintiff alleges to have ceased due to her fear of prosecution are prohibited by the statutes that she challenges. Plaintiff's stated intent is to participate in political discourse; political debate does not fall within the statutes. Simply put, her allegations are not sufficient to violate these two statutes, not as written and not as interpreted by Ohio courts; she has no injury-in-fact.

### 2.    Plaintiff Faces No Credible Threat of Prosecution

The three cases she cites fail to support the reasonableness of her fear, and to justify Prosecutor Fox as a defendant in this case. As stated above, to be successful in her pre-enforcement challenge, the plaintiff must also demonstrate a credible threat of prosecution; her conjecture alone is not sufficient. *Schickel v. Dilger*, 925 F.3d 858, 865 (6th Cir.2019); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 134 S. Ct. 2334, 189 L. Ed. 2d 246 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979)).

Though Plaintiff alleges that the Rasawehr and Summers cases demonstrate that her fear of prosecution is imminent, this court is not required to take her allegations regarding these cases in the public record as fact when public documents contradict her statements. *Goodwin v. County of Summit*, 2016 U.S. Dist. LEXIS 128901, at *15 (N.Dist, 2016); see also *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012).

A review of the cases cited by the Plaintiff shows that her claims do not withstand scrutiny.  The public record demonstrates that the Rasawehr case cited involved Mr. Rasawehr's systematic harassment of his family.  See *State v. Rasawehr*, 3d Dist. Mercer No. 10-19-15, 2020-Ohio-429.   The remaining two cases are ongoing and involve the systematic harassment of a victim and her family by her perpetrator's parents.  The public record also demonstrates that the Summers defendants were indicted for their conduct involving the victim, not political commentary.  (Fox Answer, Doc. 10, PageID #40-41, at ¶25 and ¶26.)  See also Mercer County Common Pleas Case Nos. 19-CRM-106 and 19-CRM-107, indictments filed 6/20/2020)   Specifically, they were charged based upon their continuing pattern of conduct designed to harass the victim in their son's criminal case.  (*Id.*).  Further, that case is ongoing, having been stayed pending the outcome of this case.  The Plaintiff's misunderstandings of those cases and her unjustified fears are not reasonable and fail to establish any threat of prosecution.

Not only does Plaintiff misconstrue the cases, but she cites them attempting to reach subsections of the statute never used in those cases.[7]  Specifically, she asks this court to declare Ohio Revised Code sections 2903.211(A)(1), (A)(2), (D)(1) (the definition of "pattern of conduct"), and (D)(7)(the definition of "post a message"), effectively the entire Menacing by Stalking statute, as unconstitutional on its face.  None of the three cases cited by the Plaintiff involve Ohio Revised Code 2901.211(A)(2).  Similarly, she challenges the constitutionality on its face of Ohio Revised Code 2917.21(A)(1), (A)(6), (A)(10), (B)(1) and (B)(2), the telecommunications statute.   And

---

[7] Plaintiff does not even claim personal knowledge of any of the cases she cites.  Rather she merely states that she has learned of them through the media.  Complaint, Doc.1, PageID #10, at ¶30.

again, none of the cases cited by the Plaintiff involve 2917.21(A)(1), 2917.21(A)(10), or
2917.21(B)(2).  Plaintiff has no credible threat of prosecution, but only speculation and
unsupported fears.  She is inappropriately requesting a hypothetical advisory opinion from
this court. See *Michigan State Chamber of Commerce v. Austin*, 788 F.2d 1178 (6th Cir.
1986)(noting that abstract questions are not a case in controversy). Her challenge has
caused the a months long stay and delay of the two criminal cases she cites.  (Fox Answer,
Doc. 10, PageID #40-41, at ¶25 and ¶26.  See also Celina Municipal Court Case Nos. 19-
CRB-00410 and 19-CRB-00411).

      The Plaintiff alleges that she uses social media to criticize the government, and that she
reasonable fears prosecution because of three cases that have occurred in Mercer County.  A
review  of the public record, reveals that the plaintiff has misunderstood or misrepresented the
facts of those cases.  The *Rasawehr* case involved harassment and menacing of family members
unrelated to criticism of government or elected officials.  *State v. Rasawehr*, 3d Dist. Mercer No.
10-19-15, 2020-Ohio-429.

      The final two cases that she cites are also problematic.  First, she materially
misunderstands or misrepresents the nature of the charges and the amount of potential jail time
faced by the defendants.  She then speculates as to the reasons for the charges, without resorting
to any of the readily available public records that contradict her fears and conjectures that
resulted in her allegations in this case.  Finally, these cases have not reached even a trial level of
completion.  Her unsupported fear and speculation have caused those two criminal cases to be
stayed until the outcome of this case is determined.  Thus, Plaintiff has not credibly cited to any
Ohio case where the statutes she challenges have been used to prosecute political speech or
criticism, nor has she faced any credible threat of prosecution.  Certainly none of her allegations

state a claim against Prosecutor Fox and also fail to demonstrate a pre-enforcement injury-in-fact.

### 3. Plaintiff's Allegation of Fear is Not Credible.

Plaintiff has not demonstrated any credible instances of Ohio cases prosecuting for political speech and has not been threatened with prosecution. Her speculation and unsubstantiated fear is not enough to confer standing. In fact, a review of Ohio case law demonstrates that Ohio courts have consistently interpreted both of the statutes to involve purposeful action targeted at the victim – the "specific intent" requirement. For instance, for telecommunications harassment Ohio courts have determined that the defendant must have a "purpose" to harass the victim. See, e.g. *State v. Harshbarger*, 3d Dist. Auglaize No. 2-09-19, 2010-Ohio-4413; *City of Hamilton v. Combs*, 2019-Ohio-190, 131 N.E.3d 297, 302 (12th Dist.); *In re C.W.*, 1st Dist. Hamilton Nos. C-180677, C-180690, 2019-Ohio-5262; *Plunderbund Media L.L.C. v. Dewine*, 312 F. Supp. 3d 654, 667 (N.D.Ohio 2018), affirmed by *Plunderbund Media, L.L.C. v. DeWine*, 753 F.App'x 362 (6th Cir.2018). Similarly, under the menacing by stalking statute the defendant must "by engaging in a pattern of conduct" act knowingly to menace the victim. See, e.g. *State v. Plants*, 5th Dist. Tuscarawas No. 2009 AP 10 0054, 2010-Ohio-2930; *State v. Barnhardt*, 9th Dist. Lorain No. 05CA008706, 2006-Ohio-4531; *State v. Werfel*, 11th Dist. Lake Nos. 2002-L-101, 2002-L-102, 2003-Ohio-6958. It is the intent and conduct or pattern of conduct that matters. Not only has Plaintiff has not alleged an intent that falls within the scope of these requirements, her alleged fear of prosecution is not credible given the status of Ohio case law.

In addition to providing no substantiation for her alleged fears of prosecution, the fears themselves do not withstand scrutiny. Mr. Rasawehr's prosecution began in 2016, ending with a

conviction in May of 2019.    His appeal was denied in February of 2020.  The Summers cases

began in June of 2019.  The Plaintiff did not file this action with the court herein until January

11, 2020.  The defendants were not fully served until March of 2020.  In fact, Prosecutor Fox

learned of the case through a press release, rather than service of process.  And, the Summers

defendants filed a Motion to Stay their cases a mere *six days* after the case at bar was filed, and

weeks before the Plaintiff bothered to serve him.  The prosecutor had to wait a full two months

before service was attempted and made on him, and another 30 days beyond that before the State

of Ohio was served.  This delay in service has interfered in the Summers criminal case, delaying

the State of Ohio from obtaining justice for the victim of the years-long harassment perpetrated

by the Summers defendants.  This slow timeline does not demonstrate fear on behalf of a

Plaintiff who is concerned about the abridgment of her rights; the only thing that Plaintiff has

done in a speedy manner has been to provide the pleading to the press and defense counsel for

the Summers criminal case – and those actions brought that criminal case to an immediate stand-

still. [8]    Additionally, her clear lack of understanding of those cases show the true nature of her

---

[8] This is an unlikely coincidence, as Jennifer M. Kinsley, Esq., one of the Plaintiff's attorneys in
this matter, also represented Christopher Summers. Christopher Summers is the son of the
defendants accused of harassing their son's victim in the Summers' prosecutions.  Ms. Kinlsey
has represented Chris Summers in at least seven cases in state court.  She entered an appearance
in the direct appeal of the Mercer County Conviction in the Third District Court of Appeals in
Case No. 10-13-22 by filing a motion to reopen the appeal.  She represented Chris Summers in
the Ohio Supreme Court in Case No. 2014-2031 wherein she sought discretionary review of the
direct appeal.  She also represented Chris Summers in the Ohio Supreme Court in Case No.
2015-0496 wherein she sought discretionary review of Third District's denial of the motion to
reopen the direct appeal.

Further, she entered an appearance in the Mercer County Common Pleas Court Case 13-CRM-
030 to litigate his post-conviction relief.  She represented him in the appeal of the denial of the
petition for post-conviction relief in the Third District Court of Appeals Case No. 10-15-15.  She
also represented Chris Summers in the Ohio Supreme Court in Case No. 2016-0640 wherein she
sought discretionary review of Third District's affirming of the Trial Court denial of post-

fear: unsubstantiated speculation and conjecture.  This is not sufficient to confer standing with this court, and her case should be dismissed.

### 4.    Plaintiff's Challenge is Not Ripe for Review.

The second aspect of justiciability is whether the case is "ripe" for review.  Ripeness is an issue when it addresses future events that may never come to pass as anticipated, or even at all. *NRA of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir.1997); see also *Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir.2019); *Bible Believers v. Wayne Cty.*, 805 F.3d 228 (6th Cir.2015).  Pre-enforcement cases are ordinarily ripe for review only if "the probability of the future event occurring is substantial and of sufficient immediacy and reality to warrant issuance of a declaratory judgment."  *NRA of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir.1997).   In determining whether a case is ripe for review, the court should "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding jurisdiction."   *NRA of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir.1997).  That evaluation process involves examining the hardship to the parties, the "likelihood that the harm alleged" by the plaintiff will come to pass, the fitness for a judicial resolution using a pre-enforcement challenge "which requires a determination of whether the factual record is sufficiently developed to produce a fair adjudication of the merits" of each party's claims.  *Id.* at 284.  In cases involving the First Amendment, courts typically focus on "how imminent the threat of prosecution is and whether the plaintiff has sufficiently alleged an intention to refuse to comply with the statute in order to ensure that the fear of prosecution is genuine and the alleged chill on First Amendment rights is

---

conviction relief. Finally, she also represented Chris Summers in the Third District Court of Appeals by filing a Writ of Mandamus and Writ of Procedendo in Case No. 10-15-13.

concrete and credible, *and not merely imaginative or speculative*." *NRA of Am. v. Magaw*, 132 F.3d 272, 285 (6th Cir.1997)(emphasis added).

As discussed above, the Rasawehr case does not involve political expression.  The *Summers* criminal cases have been stayed prior to trial and before the State has had the opportunity to put on evidence demonstrating the defendant's intent.  Thus, the facts of that case have not been determined by an Ohio court of law.  With little factual record developed, the case is simply not ripe for review by this court. See *Norton v. Ashcroft*, 298 F.3d 547, 554 (2002). The State of Ohio should not have to try its case first in federal court.

## IV.    Constitutional Abstention Doctrine Should Apply

The menacing by stalking law and the telecommunications harassment law address important matters of public safety, and this court should await Ohio court construction prior to ruling on a facial challenge to the statutes.  As noted by the U.S. Supreme Court:

> Attention to the policies underlying abstention makes clear that in the circumstances of these cases, a federal court should await a definitive construction by a state court rather than precipitously indulging a facial challenge to the constitutional validity of a state statute. There can be no doubt that a state obscenity statute concerns important state interests. Such statutes implicate "the quality of life and the total community environment, the tone of commerce in the great city centers, and, possibly, the public safety itself." *Paris Adult Theatre I* v. *Slaton*, 413 U.S. 49, 58 (1973). The nature of the overbreadth claim advanced by appellees suggests that abstention was required because the Washington statute is "fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question." *Harman* v. *Forssenius*, 380 U.S. 528, 535 (1965).

> The First Amendment overbreadth doctrine allows a challenge to the validity of a statute on its face only if the law is substantially overbroad. *City Council of Los Angeles* v. *Taxpayers for Vincent*, 466 U.S. 789, 799-801 (1984); *New York* v. *Ferber*, 458 U.S. 747, 769-773 (1982). Thus, analysis of the constitutional claims advanced by appellees necessarily requires construction of the Washington statute to assess its scope. *Id*., at 769, n. 24; *Broadrick* v. *Oklahoma*, 413 U.S. 601, 618, n. 16 (1973) ("[A] federal court must determine what a state statute means before it can judge its facial constitutionality"). Furthermore, a narrowing construction of a statute might obviate any challenge on overbreadth grounds. *E. g., id*., at 617-618 (relying on interpretation of State Personnel Board and Attorney General to reject overbreadth claim). Where a state statute has never been construed or applied, it seems rather obvious that interpretation of the

statute by a state court could substantially alter the resolution of any claim that the statute is facially invalid under the Federal Constitution.

*Brockett v. Spokane Arcades*, 472 U.S. 491, 508-509, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985).

When interpreting the telecommunications statute challenged by the Plaintiff, Ohio courts have

held that abusive and harassing message must be directed to an individual, not simply about an

individual."  *Plunderbund Media L.L.C. v. Dewine*, 312 F. Supp. 3d 654, 667 (N.D.Ohio 2018).

As noted above, the cases that Plaintiff relies upon did not involve most of the sections

that she has challenged before this court.  Further, the Rasawehr criminal case does not factually

involve any conduct similar to that which the Plaintiff has placed at issue in this case.

Additionally, the Summers criminal cases are ongoing and have been stayed pending a decision

in this court, and no less than two abstention doctrines should be considered in dismissing this

matter.  Thus, Plaintiff's granting plaintiff standing based upon an incomplete case that deals

with factually different conduct than alleged by the Plaintiff would mire this court in an ongoing

criminal case.  Federal courts have developed abstention doctrines to guide courts in these

circumstances.

The *Younger* abstention doctrine was developed when a defendant in a criminal case

sought declaratory relief in federal court while his state criminal case was ongoing.   That

defendant was joined by other Plaintiffs in asking the federal courts to enjoin the criminal

proceedings and declare the statute at issue to be unconstitutionally vague and overbroad.

*Younger v. Harris*, 401 U.S. 37 (1971).   The court ruled that the federal courts should abstain

from enjoining a state court criminal case and that the additional plaintiffs who alleged to "feel

inhibited" by the statute could not have standing due to these "imaginary or speculative" fears of

prosecution.  In this case, the Summers defendants themselves have not joined the case.  But,

they have used this case to convince a state court to place an indefinite stay on their criminal case.  (Fox Answer, Doc. 10, PageID #40-41, at ¶25 and ¶26.  See Celina Municipal Court Case Nos. 19-CRB-00410 and 19-CRB-00411).  Had the Summers brought this case themselves, this case would fall squarely within the *Younger* doctrine.  Instead, it has been brought by a "Jane Doe" and is being used by the Summers' defendants to justify an ongoing stay of the case.  This is in addition to the remarkable connection between the Summers and one attorney in this case.  (See FN. 8.)  If this court declines to dismiss the case, it will be in the untenable position of having to prejudge the facts and speculate as to the outcome of an ongoing state criminal case.

The *Pullman* abstention doctrine should also be considered by this court.  The *Pullman* Doctrine states that  a "federal court should abstain from deciding federal constitutional questions if the resolution of uncertain state law issues could render moot the federal issue, or present it in a different posture." *Philman's, Inc. v. City of W. Carrollton*, 577 F.Supp. 1380 (S.D.Ohio 1983).   Again, Plaintiff cites to the Summers case to claim standing.  But, without a state determination of the facts and application of those facts to law, this court would be left with only speculation and conjecture.  Ohio Courts have held that an "abusive and harassing message must be directed to an individual, not simply about an individual." *Plunderbund Media L.L.C. v. Dewine*, 312 F. Supp. 3d 654, 667 (N.D.Ohio 2018).  In relying upon the *Summers* case, Plaintiff asks this court to speculate about the facts of an ongoing case and to assume that the Ohio Courts will change how they apply the statute.  And, the Plaintiff has failed to point to any cases in Ohio that construe much of the statutes they are challenging.

Finally, as noted above, the plaintiff challenges portions of the two statutes that have not been at issue in the criminal cases she cites attempting to show a credible threat of prosecution.  Further, the two companion cases cited by plaintiff have been halted mid-stream, prior to trial,

with only the Plaintiff's conjecture and misunderstanding of the cases causing her to cease political discourse.  The bill of particulars from the companion cases demonstrate that the Summers were charged with harassing the victim, not political dialogue.  (Fox Answer, Doc. 10, PageID #41, at ¶ 27.  See also Celina Municipal Court Case Nos. 19-CRB-00410 and 19-CRB-00411).  Were the court to continue based upon these cases, the Prosecutor would be forced to try his criminal case before this court.  This waste of judicial and governmental resources is unnecessary and epitomizes why the abstention doctrine should apply.  Especially when, as here, the Plaintiff can only show speculative fear and conjecture rather that any imminent threat of prosecution.

## V.       Plaintiff has Failed to Seek Approval to Proceed By Pseudonym

The federal rules prohibit a plaintiff from proceeding under pseudonym without specific permission.  Failure to seek that permission is fatal to the case.  Specifically, the Sixth Circuit has stated:

> A plaintiff wishing to proceed pseudonymously must follow a particular procedure: Ordinarily, a plaintiff wishing to proceed anonymously files a protective order that allows him or her to proceed under a pseudonym. In this case, however, the docket sheet does not reflect any motion or proceeding dealing with whether the three anonymous plaintiffs could proceed under pseudonyms. Failure to seek permission to proceed under a pseudonym is fatal to an anonymous plaintiff's case, because, as the Tenth Circuit has held, "the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them."

*Malibu Media, LLC v. Doe*, S.D.Ohio No. 1:14-cv-493, 2015 U.S. Dist. LEXIS 6649, at *13 (2015)(quoting *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636-37 (6th Cir. 2005) (quoting *Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989)).

In this case, the Plaintiff has failed to seek specific permission to proceed under a pseudonym.  Without such permission, this court lacks jurisdiction to hear the matter.

## CONCLUSION

Because the Plaintiff fails to make a plausible case that Prosecutor Fox and the Ohio Courts have improperly expanded the challenged statutes to include First Amendment protected speech, because she has failed to demonstrate an injury-in-fact, because she has failed to demonstrate a credible threat of prosecution, and because ruling on this case would unduly interfere in an ongoing state criminal case, the plaintiff has failed to state a claim against Prosecutor Fox and failed to demonstrate standing.  Further, Plaintiff's failure to seek approval to proceed via pseudonym divests this court of jurisdiction.  For all of these reasons, and for all the reasons set forth in the Motion for Judgment on the Pleading filed on behalf of the State of Ohio, not only should Prosecutor Fox be dismissed from the case but the entire case should also be dismissed for lack of standing and jurisdiction.

Respectfully submitted,

/s/  *Amy B. Ikerd*
**Amy B. Ikerd, (0067067)**
**Assistant Prosecuting Attorney**
**119 North Walnut Street**
**Celina, OH 45828**
**(419) 586-8677 (Telephone)**
**(419) 586-8747 (Facsimile)**
**amy.ikerd@mercercountyohio.org**

## PROOF OF SERVICE

A copy of the foregoing was served upon counsel for the Plaintiff via e-mail through the EFC system for the following parties:

Jennifer M. Kinsely
Kinsley Law Office
P.O. Box 19478
Cincinnati, Ohio 45219
kinsleylawoffice@gmail.com

Matthew Miller-Novak
Godbey & Associates
708 Walnut Street, Suite 600
Cincinnati, Ohio 45202
matt@godbeylaw.com

The Office of Dave Yost
Ohio Attorney General
c/o Tiffany Carlisle
Assistant Attorney General
30 E. Broad St.
Columbus, Ohio 43215
Michael.Walton@ohiottorneygeneral.gov
Julie.Pfeiffer@ohioattorneygeneral.gov

/s/ *Amy B. Ikerd*
Amy B. Ikerd
Assistant Prosecuting Attorney