UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JANE DOE, | : | Case No. 3:20-cv-00010 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| DAVE YOST, | : | |
| Ohio Attorney General, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.     Introduction

Plaintiff Jane Doe is a resident of Dayton, Ohio with a keen interest in the

activities of local government officials.  In the past, she engaged in political dialogue on

the internet, often on Facebook pages critical of government officials.  She no longer

does this because she fears she will be prosecuted for violating Ohio's Menacing by

Stalking or Telecommunications Harassment statute.  She is especially frightened that

Defendant Prosecutor Matthew K. Fox in Mercer County, Ohio will pursue criminal

charges against her under these Ohio statutes, as he has against three other online

commentators.

Plaintiff has not been criminally charged under either Ohio statute that she

presently challenges.  She thus brings a pre-enforcement constitutional challenge to each

---

[1]Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

statute on its face under both the United States and Ohio Constitutions.  More specifically, she seeks a declaratory judgment, *see* 28 U.S.C. § 2201, holding that each statute criminalizes political speech in violation of the Free Speech Clause of the First Amendment to the United States Constitution and analogous provisions in Ohio's Constitution.  She also seeks (in her Complaint, not yet by motion) preliminary and permanent injunctive relief.

Defendants Prosecutor Fox and Ohio Attorney General David A. Yost have each filed a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c).  (Doc. No. 12, 13, 19, 20).  They contend, in part, that dismissal of Plaintiff's Complaint is warranted because she lacks standing under Article III of the U.S. Constitution and because her Complaint fails to state a claim upon which relief can be granted.  Plaintiff opposes Defendants' Motions.  (Doc. No. 18, 23).

## II.    Plaintiff's Complaint

Plaintiff asserts that Ohio's Menacing by Stalking statute, Ohio Rev. Code § 2903.211, and Telecommunications Harassment statute, Ohio Rev. Code § 2917.21, impermissibly sweep within their scope a substantial amount of constitutionally-protected speech.  She alleges that Prosecutor Fox has used these two statutes to prosecute outspoken critics of Ohio's criminal justice system.  She provides three examples.  The first is *State v. Rasawehr*, No. 10-19-15, 2020 WL 615075 (Ohio Ct. App. Feb. 10, 2020), a case initiated in the Celina, Ohio Municipal Court.  She explains, "Prosecutor Fox charged a Michigan resident [Rasawehr] with, among other charges, five counts of Menacing by Stalking and eight counts of Telecommunications Harassment based on

2

emails and blog posts in which he criticized the Mercer County Sheriff's Office for failing to adequately investigate a potential homicide."  (Doc. No. 1, PageID 9 (footnote omitted)).

Plaintiff's second example is *State v. Charles Summers*, No. 19-CRM-107(Mercer Cnty., Celina Mun. Ct.) in which Prosecutor Fox charged Charles Summers, the father of Chris Summers (who had been convicted and sentenced in a previous case), for allegedly criticizing his son's prosecution on a Facebook page titled, "Justice for Chris."  Charles Summers, "criticized the fairness of his son's trial and attacked the veracity of the victim's public trial testimony."  (Doc. No. 1, PageID 9).  Plaintiff explains, "None of the 'Justice for Chris' Facebook posts were directed to the victim's or any public official's social media accounts, and the only way to view the posts was to either like the page, so that the content would appear in the liker's news feed, or to search and view the Facebook page voluntarily."  *Id.*  Yet, according to Plaintiffs, Prosecutor Fox brought many charges against Charles Summers—namely, "30 counts of Attempted Telecommunications Harassment, one count of Menacing by Stalking, and one count of Attempted Menacing by Stalking, collectively carrying up to 279 months in jail."  *Id.*

The third case Plaintiff points to, *State v. Vicki Summers*, No. 19-CRB-00401 (Mercer Cnty., Celina Mun. Ct.), involved similar charges against Vicki Summers (Charles Summers' wife) for her purported activities on the "Justice for Chris" Facebook page.  (Doc. No. 1, PageID 9).

Adding to Plaintiff's fear, "[n]either Jeff Rasawehr, nor Charles and Vicki Summers are residents of Mercer County, yet they were still charged by Prosecutor Fox

3

in Mercer County based on their web-based criticisms of Fox and other government officials.  Both the *Rasawehr* case and the [*Summerses* cases] have been the subject of widespread media coverage in Mercer County and the surrounding counties and cities." *Id*. at 10.  Before Rasawehr and the Summerses were criminally charged, Plaintiff knew they had criticized Prosecutor Fox and other Mercer County officials on the internet. Plaintiff had also criticized Prosecutor Fox and other Mercer County officials on "Justice for Chris" and other social-media websites and blog posts.  But after Charles Summers was charged, Plaintiff stopped engaging in political speech online for one reason:  She feared similar criminal prosecution under Ohio's Menacing by Stalking or Telecommunications Harassment statute by a prosecutor in Ohio—especially Prosecutor Fox—"simply for engaging in democratic debate."  *Id*. at 10-11.  She, moreover, does not have the financial resources to defend against such a prosecution.  And she notes that she wants "to continue exercising her First Amendment rights to speak out about matters of local governmental concern, but is afraid to do so without the protection and intervention of the Court."  *Id*. at 11.

III.  **Discussion**

    A.    **The First Amendment**

    The First Amendment to the U.S. Constitution mandates in part, "Congress shall make no law ... abridging the freedom of speech …."  The Fourteenth Amendment extends this mandate to the States.  *Citizens for Tax Reform v. Deters*, 518 F.3d 375, 379 (6th Cir. 2008) (citing *Thornhill v. Alabama,* 310 U.S. 88, 95 (1940)); *see McIntyre v. Ohio Elections Com'n*, 514 U.S. 334, 336 n.1 (1995).

4

> One of the main interests embodied in the First Amendment is that of a free, sovereign people using the power of persuasion, rather than force, to govern itself. Accordingly, the Supreme Court has held that the First Amendment places a high value on the right to engage freely "in discussions concerning the need for [political] change,"....

*Deters*, 518 F.3d at 379 (quoting *Meyer v. Grant,* 486 U.S. 414, 421 (1988)).

### B.    The Challenged Ohio Statutes

Plaintiff claims that Ohio's Menacing by Stalking statute is overbroad and vague

and consequently criminalizes speech protected by the First Amendment. The Menacing

by Stalking statute provides:

> (1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or … cause mental distress to the other person or a family or household member of the other person….
>
> (2) No person, through the use of any form of written communication or any electronic method of remotely transferring information, including, but not limited to, any computer, computer network, computer program, computer system, or telecommunication device shall post a message or use any intentionally written or verbal graphic gesture with purpose to do either of the following:
>
> (a) Violate division (A)(1) of this section;
>
> (b) Urge or incite another to commit a violation of division (A)(1) of this section.

Ohio Rev. Code § 2903.211(A).

The statute defines "pattern of conduct," in part, as follows:

> the *posting of messages*, use of intentionally written or verbal graphic gestures, or receipt of information or data through the use of any form of written communication or an electronic method of remotely transferring information, including, but not limited to, a computer, computer network, computer program, computer system, or telecommunications device, may constitute a "pattern of conduct."

5

§ 2903.211(D)(1) (emphasis added). And the phrase "posting of messages" is further defined as "transferring, sending, posting, publishing, disseminating, or otherwise communicating, or attempting to transfer, send, post, publish, disseminate, or otherwise communicate, any message or information, whether truthful or untruthful, about an individual, and whether done under one's own name, under the name of another, or while impersonating another." § 2903.211(D)(7).

A first conviction for Menacing by Stalking is a first-degree misdemeanor, § 2903.211(B)(1)-(2), exposing the offender to a maximum sentence of six-months imprisonment and $1,000 fine. *See* § 2929.24(A)(1), § 2929.28(A)(2). A second violation (after a first conviction) is a fourth-degree felony, exposing the offender to a maximum of 18 months in prison.

Plaintiff also contends that Ohio's Telecommunications Harassment statute is overbroad and vague and consequently criminalizes speech protected by the First Amendment. This statute states:

> (B)(1) No person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person.
>
> (2) No person shall knowingly post a text or audio statement or an image on an internet web site or web page for the purpose of abusing, threatening, or harassing another person.

§ 2917.21. A first conviction of Telecommunications Harassment is a first-degree misdemeanor, § 2917.21(C)(2), exposing the offender to a maximum sentence of six-months imprisonment and $1,000 fine, § 2929.24(A)(1); § 2929.28(A)(2). Additional

violations (after a first conviction) are fifth-degree felonies punishable by up to 12 months in prison.

### C.    Article III Standing

### 1.

Article III of the Constitution ties the jurisdiction of federal courts only to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  The standing requirement animates these two terms "by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'"  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (citation omitted).  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  The party invoking federal jurisdiction shoulders the burden to demonstrate Article III standing.  *Am. Civil Liberties Union of Ky. v. Grayson Cnty., Ky*., 591 F.3d 837, 843 (6th Cir. 2010).

Attorney General Yost contends that Plaintiff lacks Article III standing because she has not suffered an actual concrete injury and fails to allege facts showing she faces an imminent, credible threat of prosecution under Ohio's Menacing by Stalking or Telecommunications Harassment statute.  Prosecutor Fox concurs.

Plaintiff maintains that the standing requirements are relaxed for plaintiffs seeking redress for a violation of their First Amendment right to free speech.  She satisfies these relaxed-standing requirements, she contends, based on her well-founded fear of criminal prosecution under Ohio's Menacing by Stalking or Telecommunications Harassment statute if she criticizes Prosecutor Fox (or another prosecutor in Ohio) online, especially

on the Facebook page "Justice for Chris." She was aware of the online criticisms offered by Rasawehr and the Summerses before their arrests "because she had seen and commented on various social media and blog posts that were critical of Fox and other Mercer County officials. In those comments, [Plaintiff] offered criticisms of Mercer County government officials, their actions, and decisions." (Doc. No. 1, PageID 10).

Plaintiff argues that her fear of prosecution is well founded because Prosecutor Fox has prosecuted Rasawehr, and is currently prosecuting the Summers, for their online speech. She asserts that their online speech is similar to her online criticisms of Prosecutor Fox and the other local government officials. Her fear of prosecution escalates when she ponders her lack of financial resources to pay an attorney to defend her from possible criminal charges under these statutes.

## 2.

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *SBA List*, 573 U.S. at 157-58 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)). "Each of these elements 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive states of the litigation.'" *White v. United States*, 601 F.3d 545, 551 (6th Cir. 2010) (quoting *Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008)). Because Defendants presently seeks dismissal at the pleading stage for lack of standing, the allegations in Plaintiff's Complaint are accepted as true and her

Complaint is construed liberally in her favor. *Id*.

> General factual allegations of injury may suffice to demonstrate standing, "for on a motion to dismiss [the court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 …. However, "standing cannot be inferred … from averments in the pleadings, but rather must affirmatively appear in the record," *Spencer v. Kemna*, 523 U.S. 1, 10-11, … (1998), nor will "naked assertion[s] devoid of further factual enhancement" suffice, *Ashcroft v. Iqbal*, 556 U.S. 662, … (2009) …. Rather, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*….

*Id*. at 551-52.

As to standing itself, a "plaintiff suffers an 'injury in fact' when his [or] legally protected interest has been invaded and the injury is both 'concrete and particularized' and 'actual or imminent, not 'conjectural' or 'hypothetical.'" *Kiser v. Reitz*, 765 F.3d 601, 607-08 (6th Cir. 2014). "Although most federal claims assert allegations that the plaintiff has suffered a past injury, '[a]n allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.'" *Id*. (quoting *SBA List*, 573 U.S. at 158).

In pre-enforcement cases, "[d]eclaratory judgments are typically sought before a completed 'injury-in-fact' has occurred …." *Nat'l Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) (citation omitted). Standing does not automatically stop such cases from proceeding but does limit them "to the resolution of an 'actual controversy.'" *Id*. (citation omitted). "[A] plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review." *Id*. (citation omitted).

> Although in regard to criminal statutes, courts are wary of compromising the public interest in efficient law enforcement by intervening prior to prosecution and foreshortening the prosecutor's action, courts have allowed pre-enforcement review of a statute with criminal penalties when there is a great and immediate danger of irreparable loss. *Watson v. Buck,* 313 U.S. 387, 400 … (1941).

*Id*.

In the present case, the standing requirement does not force Plaintiff to endure actual arrest or prosecution as a prerequisite to challenging the constitutionality of Ohio's Menacing by Stalking or Telecommunications Harassment statute. *See SBA List*, 573 U.S. at 158.  Her allegations must, however, still establish her injury in fact by alleging "'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'"  *Kiser*, 765 F.3d at 608 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)); *see SBA List*, 573 U.S. at 157.

Plaintiff sufficiently alleges her desire and intention speak online about political matters.  More specifically, she intends to again participate in online discussions critical of Ohio's criminal-justice system and Prosecutor Fox and other local government officials on the Facebook page "Justice for Chris."  Such speech is surely affected with a constitutional interest.  *See Deters*, 518 F.3d at 379 ("the First Amendment places a high value on the right to engage freely 'in discussions concerning the need for [political] change ….'" (citation omitted)); *Signature Mgmt. Team, LLC v. Doe*, 876 F.3d 831, 835 (6th Cir. 2017) ("Internet speech receives the same First Amendment protection as other speech.").

Assuming in Plaintiff's favor that the Ohio statutes she challenges proscribe such online political speech, she is left with one standing requirement: she must show that she faces a credible threat of prosecution under one (or both) of these statutes by Prosecutor Fox or another prosecutor in Ohio. *See Kiser*, 765 F.3d at 608.

Plaintiff's subjective fear of prosecution—the "subjective chill" upon her First Amendment right to free speech—is insufficient by itself to show she faces a credible threat of prosecution. *McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016). But she may identify a credible threat of prosecution by alleging

> a subjective chill *and* point[ing] to some combination of the following factors: (1) a history of past enforcement against [her] or others; (2) enforcement warning letters sent to [her] regarding [her] specific conduct; and/or (3) an attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate an enforcement action.

*Id*. (internal citations omitted).

Plaintiff does not allege that Prosecutor Fox or another state or local government official in Ohio has pursued charges against her for violating Ohio's Menacing by Stalking or Telecommunications Harassment statute. There is likewise no indication that she has received an enforcement warning letter regarding her (online or in-person) political speech. And neither the Menacing by Stalking nor the Telecommunications Harassment statute contains a mechanism or attribute that makes enforcement easier or more likely.

Plaintiff is therefore left with the possible combination of her subjective fear of prosecution combined with past enforcement of these Ohio statutes against others. *See*

*id.* As to the latter, she relies on other criminal cases brought under these statutes—specifically, the prosecutions of Rasawehr and the Summerses—to show a history of past enforcement. She describes these individuals as "similarly situated speakers" and alleges that they were charged with many violations of Ohio's Menacing by Stalking and Telecommunications Harassment statutes for their comments on the "Justice for Chris" Facebook page. She contends, "Central to [her] fear—and indeed a primary source of it—is the fact that she has posted comments on the very same "Justice for Chris" Facebook page that is the subject of a 62-count indictment [against the Summerses]." (Doc. No. 18, PageID 189-90).

Defendants contend that Plaintiff's reliance on the prosecutions of Rasawehr and the Summerses is misplaced because their online comments were not similar to the political speech Plaintiff wants to engage in online. Defendants differentiate Plaintiff's speech by relying on public records in those criminal cases, some of which are attached to Prosecutor Fox's Answer. Defendants' reliance on those public records, however, gives pause at this early stage of the case.

**3.**

Plaintiff points out that the public records upon which Defendants rely are beyond the four corners of her Complaint. In her view, consideration of this evidence will implicitly transform Defendants' Rule 12(c) Motions into Motions for Summary Judgment, which may not be resolved without providing her an opportunity "to conduct discovery about critical questions of statutory application, including how the statutes at issue in this case have been applied by Mercer County in the *Summers* and *Rasawehr*

cases."  (Doc. No. 18, PageID 186).

Generally, when "matters outside the pleadings are presented to and not excluded by the court," a Rule 12(c) "motion must be converted to a motion for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  Yet in limited situations, the Court may take into account materials outside a complaint or answer, including public records, without conversion to summary judgment.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).  "Documents attached to the answer may be considered if they are referred to in plaintiff's complaint and are central to plaintiff's claims."  *Felix v. Dow Chemical Co.*, 2:07cv971, 2008 WL 207857, at *1 (S.D. Ohio 2008) (Graham, J.).

The public records Defendants rely on are from the criminal prosecutions Plaintiff identifies in her Complaint.  Those records are central to her assertions that she has a well-founded fear and a credible threat of prosecution under the same statutes the defendants in those cases violated (Rasawehr) or allegedly violated (the Summerses).  It is therefore proper to consider the public records attached to Prosecutor Fox's Answer when considering whether Plaintiff has standing to litigate her First Amendment claim without converting Defendants' Rule 12(c) Motions into motions for summary judgment.  *See Felix*, 2008 WL 207857, at *1.

In addition, Article III's standing requirement is jurisdictional.  *See SBA List*, 573 U.S. at 157; *Nat'l Ass'n. of Minority Contractors, Dayton Chapter v. Martinez*, 248 F.Supp.2d 679, 690 (S.D. Ohio 2002) (Rice, J).  Rule 12(b)(1) is therefore the proper procedural tool for a party to select when seeking dismissal at the pleading stage for lack

13

of standing. *See, e.g., Magaw*, 132 F.3d at 277; *Plunderbund Media, LLC v. DeWine*, 753 F. App'x 362, 365 (6th Cir. 2018); *Martinez*, 248 F.Supp.2d at 681-82. Although consideration of standing upon a summary-judgment motion under Rule 56 may be warranted in some cases, *e.g., Fine v. City of Piqua*, 3:08cv196, 2009 WL 10710394, at *3 (S.D. Ohio 2009) (Rice, J.), Defendants in the present case may contest under Rule 12(b)(1) whether Plaintiff has Article III standing by relying on the allegations in Plaintiff's Complaint and pertinent public records without conversion to summary judgment.

Despite Plaintiff's presently misplaced reliance on Rule 56, she remains entitled to the truth of the allegations in her Complaint, and her Complaint is construed in her favor. *White*, 601 F.3d at 551; *see Greater Cincinnati Coal. for the Homeless v. City of Cincinnati*, 56 F.3d 710, 715 (6th Cir. 1995).

**4.**

Returning to Plaintiff's reliance on the past-enforcement cases against Rasawehr and the Summerses, a comparative inquiry is necessary. "A threat of future enforcement may be 'credible' when the *same conduct* has drawn enforcement actions or threats of enforcement in the past." *Kiser*, 765 F.3d at 609 (emphasis added).

The Ohio Court of Appeals' decision in *State v. Rasawehr*, No. 10-19-15, 2020 WL 615075 (Ohio Ct. App. Feb. 10, 2020), explains that Rasawehr was convicted of Menacing by Stalking based on text messages he sent to, and a voicemail message he left for, his ex-wife concerning two murders he thought she had committed and gotten away with twenty years before. *Id*. at *6. The messages that violated the Menacing by

14

Stalking statute in *Rasawehr* were not political messages and did not concern any activity by a prosecutor in Ohio or a local government official in Ohio. The messages that violated Telecommunications Harassment statute in *Rasawehr* included a voicemail message threatening his ex-wife. Rasawehr also mentioned the Mercer County Sheriff in this message, and his comment revealed "an intention to inflict injury to the Mercer County Sheriff—that is, a threat[en]ing and menacing statement—as a means of creating fear in the victim [the defendant's ex-wife]…." *Id*. at *9. The defendant also used "profane language during the call as well as demeaning terms for Mercer County officials and the victim—statements, which fit within the everyday meaning of the word 'obscene.'" *Id*. At best for Plaintiff, the speech in *Rasawehr* ran afoul of Ohio's Telecommunications Harassment statute not because it was profane or demeaning but because it threatened physical harm to the Sheriff and was obscene. And, again, Rasawehr directed his comments at his ex-wife to cause her fear and to intimidate her. *Id*. These features of Rasawehr's speech are a far cry from the online (or in person) political dialogue Plaintiff wants to engage in and does not reveal that she faces a credible threat of prosecution for violating Ohio's Menacing by Stalking or Telecommunications Harassment statute.

As to the cases pending against the Summerses, Defendants point out that their criminal cases are stayed pending the outcome of the instant case. What do these two cases say about the existence, if any, of a credible threat of prosecution against Plaintiff for Menacing by Stalking and Telecommunications Harassment?

Plaintiff's Complaint alleges that the Summerses were charged with the operation

of the Facebook page "Justice for Chris" on which they criticized the fairness of their son's trial and attacked the veracity of the victim's public trial testimony. The allegations set forth in the Bill of Particulars against the Summerses support Plaintiff's Complaint, and are accepted as true, to the extent she says that the Summerses criticized the fairness of their son's trial and the victim's veracity on the "Justice for Chris" Facebook page. But examination of the Bill of Particulars reveals that the Summerses allegedly went a step further by harassing or threatening the victim on certain dates in violation of the Menacing by Stalking or Telecommunications Harassment statute. *Compare* Doc. No. 1, ¶s 25-26 *with* Doc. No. 10, PageID 68-88, 99-119. In contrast, Plaintiff wants to criticize Prosecutor Fox and other government officials about their activities. Because of this, her speech is not so closely similar to the Summerses' speech on "Justice for Chris" that their criminal prosecution creates a credible threat of similar prosecution of Plaintiff if she criticizes (online or otherwise) the activities of Prosecutor Fox or other local government officials in Ohio. *See Plunderbund Media*, 753 F. App'x at 369 ("Plaintiffs do not point to a single case where an entity or individual posting a political opinion or article online was prosecuted for telecommunications harassment or cyber-harassment.").

Plaintiff certainly disagrees. She takes a broader view of the case she seeks to litigate:

> This case is not about Jeff R[a]sawehr and the Summers family, what these individuals may or may not have said online, or the minute details of their state criminal cases, although a review of the Attorney General and the Mercer County Prosecutor's briefs in response to Plaintiff Jane Doe's motion for judgment on the pleadings might suggest otherwise. This case is instead about all Ohio speakers who, like Jane Doe, may fear prosecution simply because something they say online causes another person distress. This case

16

> is about state statutes that foist criminal penalties upon speech that is unquestionably protected by the First Amendment and embolden rogue prosecutors, like the one in Mercer County, to chill dissent and silence critics through the power of criminal enforcement. And this case is about the need for federal court intervention and robust judicial review when states exercise their sovereignty in violation of protected constitutional rights.

(Doc. No. 23, PageID 240). The first point in this well-written passage is entirely correct: This case is not about Jeff Rasawehr, the Summerses, or the minute details of their criminal prosecutions. Those cases, including some details, are pertinent here only to the issue of whether there have been past prosecutions under Ohio's Menacing by Stalking or Telecommunications Harassment statute of individuals engaged in online political speech. No comment or opinion is offered in this Report on whether the prosecutions in those cases run afoul of the First Amendment.

Plaintiff's remaining points in the above passage do not address her burden to allege facts sufficient to establish her Article III standing. "The mere 'possibility of criminal sanctions applying does not in and of itself create a case or controversy.'" *Nat'l Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 293 (6th Cir. 1997) (quoting *Boating Indus. Ass'n v. Marshall,* 601 F.2d 1376, 1384 (9th Cir. 1979) (other citation omitted)).

Plaintiff recently filed a Notice of Supplemental Authority, pointing to a decision issued by the Ohio Supreme Court in *State ex rel. Summers v. Fox*, No. 2018-0959, 2020 WL 7250544, at *1 (Dec. 10, 2020). (Doc. No. 25). Plaintiff contends that the *Summers* case is significant in the present case because it preserves a right of access to public documents even in the face of allegations that speech is somehow criminal. And Plaintiff contends that *Summers* rebuts the Mercer County Prosecutor's allegations that she is

17

somehow interfering with or harming the Summerses' prosecution through her claims in this case. Neither argument assists Plaintiff in establishing that she faces a credible threat of prosecution or otherwise has Article III standing.

**5.**

In conclusion, Plaintiff has not shown a credible threat of future prosecution under Ohio's Menacing by Stalking or Telecommunications Harassment statute. She therefore lacks Article III standing to litigate her First Amendment claim, and the Court lacks jurisdiction over this claim. In this situation, the Court should decline to exercise supplemental jurisdiction over her claims under the Ohio Constitution. *See* 28 U.S.C. § 1367(c)(3); *see also Gamel v. City of Cincinnati,* 625 F.3d 949, 952 (6th Cir. 2010) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims ….").

**IT IS THEREFORE RECOMMENDED THAT:**

1.  Defendants' Motions for Judgment on the Pleadings (Doc. No. 12, 13) be GRANTED, and Plaintiff's claims be dismissed without prejudice; and

2.  The case be terminated on the Court's docket.

December 17, 2020          *s/Sharon L. Ovington*
                                        Sharon L. Ovington
                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).